OPINION OF THE COURT
Thomas E. Mercure, J.
The respondent, James R. Dean, by order of this court dated November 15, 1979, has been adjudicated a juvenile delinquent and placed in the custody of the New York State Division for Youth for a period not to exceed 18 months, which said placement expired May 14, 1981. A petition of Jenny A. Sheehan, sworn to the 15th day of April, 1981, seeking extension of said placement was filed April 16,1981. A hearing on the petition was scheduled for May 7,1981, but, although the respondent’s Law Guardian and parents and the petitioner appeared, a hearing could not be conducted because of the fact that the respondent was AWOL. On May 12, 1981, a temporary order was entered extending respondent’s placement to July 1, 1981. On June 30,1981, a fact-finding hearing was conducted, at the conclusion of which the court reserved decision upon the petition and extended the temporary placement to August 1, 1981.
It is the position of the petitioner, a youth service team-worker for the Division for Youth, that the release of respondent into the community would be detrimental both *207 to respondent and to the community, as respondent has demonstrated the need for structure and control. In support of this position, petitioner and Mr. A1 Stumph, a community services worker at Berkshire Farm Center, testified.
Mr. Stumph, with the consent of the Law Guardian, qualified as an expert in the field of juvenile delinquency and child care. He testified that respondent was at Berkshire Farm from December of 1979 through November of 1980, during which period he closely monitored and was intimately acquainted with the respondent and his program. It was his testimony that during that period the respondent made significant progress to the extent that it was determined that residential care was no longer required. Accordingly, in November of 1980, respondent was transferred to a group home program in Rochester. From that time until the present, Mr. Stumph’s contact with the respondent has been minimal, but he has spoken with him on the telephone four or five different times and he did visit him at the group home on one occasion in January of 1980. He testified that from the time respondent arrived at the group home in November of 1980, until he left in April of 1981, he experienced considerable difficulty. Respondent was having difficulties with school, was involved with alcohol, and ran away on at least one occasion. As a result, a decision was made in April of 1980, on the part of Berkshire Farm Center to terminate their involvement with him.
The petitioner, Jenny A. Sheehan, testified that following the group home placement, respondent was placed at Camp Nueva Vista in April of 1981. She testified that respondent was only in the program for approximately two and one-half weeks when he ran away, remaining AWOL for approximately 30 to 35 days. He was brought back to the facility in mid-May and absconded again within hours. He was picked up by the New York State Police and charged with escape, a misdemeanor. He returned to the facility only a week prior to the June 30,1981, fact-finding hearing and remained only four days before absconding again on June 27, 1981. She further testified that during two of the periods that the respondent was AWOL he got *208 into trouble, one occasion involving petit larceny, and the other occasion involving the setting of a fire which badly damaged a barn. It was her opinion that respondent is presently unable to function without the kind of structure and control that continued placement would give him. She described respondent as intelligent, but very impulsive. She felt that he required ongoing therapeutic counseling and psychiatric services that only extended placement could give him.
Mrs. Elsie O’Dell testified on behalf of the respondent. She testified that she was close to the respondent, his father being her nephew. She testified that she raised respondent’s father and was looked upon by the respondent as a grandmother. Mrs. O’Dell is 65 years of age; her husband is 70. The substance of her testimony was, and the apparent purpose of her testimony was to establish that, if respondent’s placement were not continued she would provide him with a place to live.
At the conclusion of the hearing, the parties stipulated that during his placement, respondent was convicted of the class A misdemeanor of escape (assumedly escape in the third degree, in violation of Penal Law, § 205.05) in Montgomery County and was sentenced to 45 days in the Montgomery County Jail. This conviction brings about a threshold issue which has been propounded by the respondent through his Law Guardian, to wit: whether the sentence of the respondent to a 45-day term of imprisonment in a county correctional facility caused him to be discharged from the custody of the Division for Youth. Subdivision 2 of section 525 of the Executive Law provides in pertinent part that “any child who has been placed with the division shall be deemed to have been discharged therefrom if, during the period provided in the order of placement or extension thereof, he is convicted of a crime or adjudicated a youthful offender, and is committed to an institution in the department of correctional services or department of mental hygiene”.
Simply stated, the question is whether a county correctional facility is an institution in the Department of Correctional Services. No reported case has been found which resolves this issue, but some guidance can be obtained from *209 various provisions of the Correction Law. In order to more adequately understand the analysis that will follow, it is important first to distinguish between the State Department of Correctional Services (hereinafter referred to as the “department”) and the State Commission of Correction (hereinafter referred to as the “commission”). The department is provided for generally in article 2 of the Correction Law and has over-all responsibility for operation of the correctional facilities under its control. In contrast, the commission, provided for generally in article 3 of the Correction Law, has far more wide-ranging supervision of all correctional facilities within the State of New York. In section 40 of the Correction Law, within article 3 thereof, the term “Correctional facility” is given a very broad definition, including any institution operated by the State department of correctional services and any local correctional facility. A “Local correctional facility” is further defined, and includes any county jail. The foregoing definitions, contained in section 40 of the Correction Law, have, by the express term of section 40, application only to article 3 of the Correction Law. In contrast, section 2 of the Correction Law, containing definitions applicable throughout the chapter, limits its definition of “correctional facility” to institutions operated by the department. Further, subdivision 4 of section 2 of the Correction Law, defining “Correctional facility”, provides, in paragraph (c) thereof, that “[wjhenever the term ‘institution’ is used in this chapter or elsewhere in such context as to mean an institution in the department, such term shall be deemed to include correctional facilities and any other place operated by the department as a place for the confinement of persons” (emphasis supplied).
This leads to the fairly inescapable conclusion that the language contained in section 525 of the Executive Law referring to an institution in the Department of Correctional Services means just that and that the section does not apply to an institution not in the Department of Correctional Services. The definitions set forth above, contained within section 40 of the Correction Law set forth a definite contrast between local correctional facilities and institutions operated by the State Department of Corree *210 tional Services. Further, various other sections of the Correction Law make it clear that, although local correctional facilities are within the jurisdiction of the commission, they are not within the jurisdiction of the department. Specifically, article 5 of the Correction Law makes provision for co-ordinated use of State and local correctional institutions, providing, generally, for transfers of inmates between institutions operated by local government and facilities and institutions under control of the State Department of Correction. Last, section 500-c of the Correction Law provides that, outside of the City of New York and the County of Westchester, each Sheriff shall have custody of the county jails, further evidence of the fact that county jails are not within the control of the Department of Correctional Services.
The question then becomes why the Legislature would provide for the discharge from the custody of the Division for Youth of a child who has been committed to an institution in the Department of Correctional Services but not a child who has been committed to a local correctional facility. Two logical reasons are apparent. First, since the Department of Correctional Services and the Division for Youth are both executive agencies of the State of New York, it would seem logical that the Legislature would not want to burden both agencies with the responsibility for one child at the same time. Second, the anticipated length of imprisonment in State correctional facilities as opposed to local correctional facilities is a logical distinguishing factor. A person cannot be sentenced to more than one year in a local correctional facility, whereas one year would be the effective minimum length of imprisonment in a State correctional facility. Since the maximum initial placement of a juvenile delinquent under the provisions of the Family Court Act is 18 months, it would make far more sense to discharge a child from custody of the Division for Youth when he has been sentenced to a State correctional facility than a local correctional facility. Therefore, the court finds, for the reasons set forth above, that the fact that the respondent was sentenced to a term of imprisonment in a local correctional facility did not cause him to be discharged from placement with the Division for Youth.
*211 The ultimate question then arises, whether the respondent’s placement should or should not be extended. As set forth above, the testimony given at the fact-finding hearing showed that while the respondent attended Berkshire Farm Center, in a structured setting with intensive counseling and supervision, he responded well. Alternatively, in a group home, with a less structured setting, less supervision and control, and less intensive counseling, he responded very poorly. It is apparent from the record that the respondent presently lacks the self-control, discipline, and judgment, to adequately function in a nonstructured setting. Further, the testimony shows that the respondent has great potential and this court would be remiss in not affording him what may be perhaps his last opportunity to reach this potential.
Accordingly, the respondent’s placement with the Division for Youth is extended until his 18th birthday, April 30, 1982.
An order is entered.